**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellants,**

v.

**Nevelda VIDRINE, Appellee.**

**No. 17763.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Dec. 11, 1980.

Rehearing Denied Dec. 11, 1980.

---

Alex Guevara, Jr., James Shatto, Scott, Douglass & Keeton, Richard P. Keeton, Houston, for appellants.

Tom L. Pettiette, Houston, for appellee.

WARREN, Justice.

This is an appeal from a judgment awarding damages for the breach of an oral contract to settle a personal injury suit.

The main questions for review concern the sufficiency of the evidence to support the findings of the jury: (1) that there was an oral contract to settle appellee's personal injury case for $40,000, (2) that the lawyer for Southwestern Bell had apparent authority to enter into a settlement of the case, and, (3) that appellee relied on that apparent authority when she agreed to settle the case.

Mr. Dale Harvill, a Houston attorney, filed suit on behalf of appellee for personal injuries she sustained in 1971 when she tripped and fell on telephone wires allegedly placed in her yard by employees of appellant. This suit was answered by Mr. Alex Guevara, an employee of appellant, who works as a lawyer in the company's legal department. Approximately one year later the case was referred by appellant to Mr. Royce Till of Fulbright and Jaworski, who then became lead counsel for appellant.

It was the contention of appellee at trial, and on appeal, that in July of 1976, an agreement was reached between Mr. Harvill, attorney for appellee and Mr. Guevara, house counsel for appellant, that the tort case would be settled for the sum of $40,-000. The settlement was not consummated, and in the fall of 1976 appellee amended her petition and in addition to the claim for personal injuries, she alleged a cause for action for breach of an oral contract to settle the case for $40,000.

In January of 1977, the cause was called for trial. Before testimony began, a settlement was effected whereby the tort action would be settled for $25,000, without prejudice to the right of appellee to pursue her suit for damages suffered by reason of the alleged breach of the oral contract to settle for $40,000. The parties further stipulated that if on trial it was found that there was a breach of an oral contract to settle, appellee would be entitled to receive the sum of $16,000, as damages.

In January of 1980, the cause of action on the breach of the oral contract was tried before a jury which found: (1) that there was an oral contract to settle, (2) that Alex Guevara had apparent authority to settle the tort case, (3) that appellee relied on such apparent authority, and, (4) that the sum of $2300 would reasonably compensate appellee for legal services in prosecution of the breach of contract action.

Judgment was entered awarding appellees damages of $16,000 for the breach of the oral contract and $2300 for attorney's fees.

Appellant argues that there was insufficient evidence to support any of the findings of the jury relating to the contract and its breach, and that the trial court committed reversible error in admitting the testimony of appellee to the effect that employees of appellant agreed that appellant would pay her medical expenses.

■ Our duty, when reviewing points of error alleging that there is factually insufficient evidence to support them, is to reverse and remand, if after considering all of the evidence, the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *In Re King's Estate*, 244 S.W.2d 660, (Tex. 1951). The court should exercise restraint and substitute its judgment for that of the jury only when after the consideration of the record, the overwhelming weight and preponderance of the evidence shows it to be clearly wrong, unjust or shocking to the conscience. *Continental Bus Systems v. Biggers*, 322 S.W.2d 1 (Tex.Civ.App.-Houston 1959, writ ref'd n.r.e.).

■ The evidence concerning the agreement to settle is scant. Mr. Harvill testified emphatically that there was an agreement and Mr. Guevara testified just as emphatically that there was no agreement. Mr. Guevara further testified that he had never discussed settlement with a Mr. Harvill, but that he had negotiated with a Mr. Laser who worked for Mr. Harvill. Although other testimony was presented showing that a settlement was discussed between Mr. Till and a house counsel for appellant and between Mr. Laser and Mr. Guevara, none of the testimony tended to corroborate or discredit the testimony of either Harvill or Guevara on the issue of final settlement.

Even though the evidence was sparse, it was sufficient to raise a fact issue for the jury.

Next, appellant contends that Alex Guevara had no actual authority to settle the tort case and that there was insufficient evidence to support the jury's finding that he had apparent authority to settle.

■ In considering whether there was apparent authority vested in an agent, only the conduct of the principal leading one to suppose that the agent has the authority may charge the principal through apparent authority of an agent. *Southwest Title Insurance Company v. Northland Building Corporation, et al*, 552 S.W.2d 425 (Tex. 1977). It has long been settled that the mere employment of counsel does not clothe the counsel with authority to settle the cause without the specific consent of the client. *Johnson v. Back*, 378 S.W.2d 723 (Tex.Civ.App.-Amarillo 1964, no writ), *Early v. Burns*, 142 S.W.2d 260 (Tex.Civ.App.-Beaumont 1940, writ ref'd n.r.e.).

Mr. Guevara testified that he was an employee of appellant and worked in the Houston Legal Department of which Mr. Jim Shatto was local counsel in charge. He further stated that his duties pertaining to a settlement of a case assigned to him were to compile both the information concerning the case and any settlement offers and send

it to his local boss, Mr. Shatto. Mr. Shatto in turn would transmit this to the vice president and general counsel in St. Louis, who would evaluate the information and, if the demand was over a certain limit, present it to a quorum of the board of directors who would then approve or disapprove the settlement. He stated, "I do not have authority to do anything."

His testimony regarding our case was that after he had referred the case to Mr. Till, he (Mr. Guevara) acted as a liaison between himself, St. Louis and Mr. Till; that Mr. Till was hired to evaluate the case and to determine whether it could be settled and if not, to try the case; he denied ever talking settlement with Mr. Harvill, but did admit talking settlement with Mr. Laser and Mr. Till, passing the information on to Mr. Shatto, who then forwarded it to the general counsel in St. Louis.

Mr. Till testified that he had no recollection of telling Mr. Harvill to discuss a settlement of the case with Mr. Guevara, but that he would have had no objection to his doing this and that his records showed that he had a telephone conversation with Harvill on June 22, 1976 and one with Guevara on June 28, both regarding settlement of the case. He further testified that Guevara never told him in the summer of 1976 that the case was settled, and that he first learned that Harvill was contending that the case was settled when he received the letter from Harvill dated September 10.

Dale Harvill testified that in June or early July of 1976 he talked with Royce Till, who told him to "call Alex and see if you can get this worked out;" that it was he who negotiated with Guevara; that there was never any mention of or indication by Guevara that he had to get his client's approval before settling; that it was Guevara who came up with the $40,000 figure; that apparently Guevara had been batting the settlement back and forth between Houston and St. Louis and that he received no communication from Bell that Mr. Guevara lacked authority to settle.

When asked what steps he took in ascertaining the authority of Mr. Guevara to enter into the agreement, Mr. Harvill answered: "Well, Mr. Guevara is an attorney just like I am. He works for Southwestern Bell. He tries cases here for Southwestern Bell. To my knowledge he was one of the counsel for Southwestern Bell although Royce Till was in charge of litigation as such in this case. I ascertained who I should talk to concerning settlement of this case by calling Mr. Till and Mr. Till suggesting that I call Mr. Guevara ...."

In response to a question as to whether Southwestern Bell or any of its representatives ever said that Mr. Guevara did not have authority to settle, Mr. Harvill answered: "Never any indication of lack of authority. My experience ... is that, if a lawyer doesn't have authority to talk to you and to do what he agrees to do, he doesn't talk or he tells you he doesn't have such authority or else he doesn't make an agreement with you."

Briefly summarized, appellee's testimony regarding apparent authority consists of Mr. Till's suggesting that Mr. Harvill talk with Mr. Guevara about a possible settlement and that nobody connected with appellant communicated to him that Mr. Guevara lacked authority. The testimony of Mr. Guevara establishes that appellant hired him as a lawyer and assigned to him cases which involved the trial or settlement of lawsuits.

■ Since an attorney is a special rather than a general agent, his client is not required to give notice of any limitation of authority. 7 Tex.Jur.2d, Point 1 Attorneys at Law § 71, citing *Magill v. Rugeley*, 171 S.W. 528 (Tex.Civ.App.-Galveston 1914, err. ref'd); *Commercial Credit Co. v. Crone*, 270 S.W. 209, (Tex.Civ.App.-Amarillo 1925, no writ).

■ We are left with only the inference that Mr. Till, as lead counsel, knew who had authority to settle and referred Mr. Harvill to that person and the inference that appellant, by hiring Mr. Guevara and assigning him lawsuits to defend, clothed him with authority to settle. This is insufficient to show apparent authority of Mr. Guevara to settle the lawsuit.

Since we have held that the evidence was insufficient to show apparent authority, we do not reach the appellant's remaining points of error.

Reversed and Remanded.

PEDEN and EVANS, JJ., also sitting.